PROPRIETORS OF LONG WHARF *versus* PALMER *& al.*

Where no objections are made to the *legality* of the records of a proprietary, it is a presumption of law, that they have been made conformably to the requirements of the statutes in force at the time of the transactions therein recorded.

And no objections can be made against the admissibility in evidence of such records, by one claiming title from *grantors*, who were members of such proprietary, during the time the records were made.

A wharf, called Deering's wharf, was formerly built in P., one portion of it was owned by N. D. & J. H. I. and others, and the other portion by P. & J., on which the owners erected stores. The *owners*, and others associated with them, proposed to build a wharf to the channel, and divide it into shares, and widen the *Deering wharf*, and that the owners of the Deering wharf should keep the new part open, and that width to be continued to the end of said wharf for a passage way forever. The *associates* purchased the flats on which to build, and for a dock, to be held by them as *tenants in common*. The owners of Deering wharf "covenanted with the associates, to enlarge their wharf to the width specified; each owner building according to his ownership. In the deed of D. I. and others, of certain flats to the associates, was this covenant, that so much of Deering's wharf as they widened and built, "should remain open, and to be used as a free pas-

sage and way for all the said associates and their assigns to pass to, from and upon the intended wharf and transact any business in common forever.'' The deed of P. & J. to the associates, contains this clause, "to the end that the said part of said wharf now owned by us, may not obstruct or impede the free passage to, from and upon the said intended wharf, we covenant, (the part of Deering's wharf enlarged by them,) shall remain open as a free passage and way for them, their heirs and assigns, to pass to and from and upon the wharf intended to be built from the end of Deering's wharf as aforesaid, and transact any business forever." The wharf was built. A question being raised by the grantee of that portion of the Deering wharf, originally owned by P. & J., as to the right of the company to demand wharfage originating on his part: — *It was held*: —

1. That the Deering wharf remained the property in severalty of the original owners or their grantees.

2. That the part added thereto, by widening, remained for use as a *wharf* and passage way, and was an estate *in common* with the associates.

3. That the proprietors of . the *common estate* were authorized to collect all wharfage accruing from any portion of the wharf.

ON REPORT from *Nisi Prius*, SHEPLEY, C. J., presiding.

ASSUMPSIT to recover for wharfage on merchandize, shipped on board of a schooner lying at Long Wharf in Portland, at the dates of the several charges.

That a debt for wharfage for the sum sued for was incurred, was not denied; but the defence was, that the plaintiffs had no right to recover, David T. Chase claiming the amount to be due to him.

On such portions of the evidence adduced, as was legally admissible, it was stipulated, that the Court might draw such inferences as a jury would be authorized to do, and to enter a judgment in accordance with the legal rights of the parties.

The facts found are all stated in the opinion of the Court.

*Shepley & Dana*, for the defendants.

*Willis* and *Fessenden*, for the plaintiffs.

HATHAWAY, J. —Nathaniel Deering, Joseph H. Ingraham and others, and Ebenezer Preble and Joseph Jewett were owners of the wharf called Deering's wharf, in Portland.

Deering, Ingraham and others, owned the part adjoining the shore, and Jewett and Preble, the portion extending therefrom towards the channel; they each owned their respective parts in severalty. On the eighth day of December, 1792, they and others associated with them, proposed in writing, to build "a wharf on a line with the easterly side line of Fish street; the wharf to extend to the channel. The present proprietors of Deering's wharf, so called, to keep the whole width open, from the upper store to the easterly side of Fish street, and so to continue that width, the whole way down to the east end of said wharf for a passage way forever."

To accomplish the object proposed, it was necessary for the associates to purchase the flats, upon which to build, and the flats for a dock, and to acquire a right to the contemplated use of that part of Deering's wharf and flats, lying between the stores thereon and the easterly side line of Fish street extended, which was to be the line between the dock and the wharf, when completed as proposed.

In pursuance of the proposals, the associates purchased the flats upon which to build, of Deering and others, January 3, 1793, and the flats for the dock, of John Fox, January 10, 1793, as appears by the deeds in the case, to be held by them as tenants in common, and January 12, 1793, Deering, Ingraham, Preble and Jewett, by their instrument under seal, "in consideration of the conveyance of certain flats to them and others by John Fox, to serve as a dock for a wharf yet to be completed, to extend from Fore street in said Portland, including Deering's wharf, so called, to the channel of Fore river," covenanted with their associates to cause Deering's wharf to be extended and enlarged, so that the same should every where extend to the easterly side line of Fish street, continued for that purpose to the end of said Deering's wharf.

In the deed of Deering, Ingraham and others, of January 3, 1793, conveying the flats, they covenanted that the flats between their stores and the easterly side line of Fish street

continued, and the wharf included, or that might be built, within those bounds, should remain open and to be used as a free passage and way for all the grantees and assigns to pass to, from and upon the intended wharf, and transact any business *in common* forever.

Jewett and Preble, by their deed of January 12, 1793, referring to the conveyance and covenants of Deering and Ingraham, and to the conveyance of Fox, covenanted that the wharf between their stores and the dock, should " remain open as a free passage and way for them, (their associates,) their heirs and assigns, to pass to, from and upon the wharf intended to be built from the end of Deering's wharf as *aforesaid*, to transact any business forever." The defendants contend, that by this deed, Jewett and Preble conveyed to the grantees, (their associates,) the right of a passage way across their wharves, *only*, and no other estate in common therein. The language of the deed is not free from ambiguity. In the construction of a grant, the Court will consider the circumstances attending the transaction, and the particular situation of the parties, and the thing granted, in order to ascertain the intention of the parties. 3 Mass. 352.

By the instrument executed by Deering, Ingraham, Preble and Jewett, January 12, 1793, the wharf to be built is described as a " wharf yet to be completed, to extend from Fore street in said Portland, including Deering's wharf, so called, to the channel of Fore river." Fore street and the channel were the limits of the intended wharf, in its length, and those limits embraced the whole of Deering's wharf, including that of Jewett and Preble. In its breadth the intended wharf was to extend to the line of Fish street continued, and the proprietors of Deering's wharf, were to widen Deering's wharf to that extent. From the language of this instrument, there can be no doubt, that it was the intention of the parties to it, that the wharf intended to be built, including Deering's wharf, should constitute one wharf.

The flats were conveyed, by Deering and others, and by

Fox, to be held in common. Deering and Ingraham had conveyed to their associates, the right to the common use of their part of Deering's wharf, lying between their stores and the Dock. Jewett and Preble were parties to all those conveyances, and referred to them in their deed of Jan. 12, 1793. According to the instrument executed by Deering, Ingraham, Preble and Jewett, of the *same date* with the deed of Preble and Jewett, the "intended wharf" included Deering's wharf. If they intended to grant, merely, a right of way, or passage across the wharf, it is not perceived why they should have conveyed a right to "pass upon the wharf intended to be built, and transact any business, forever." This language would have been entirely superfluous and unmeaning. They could not, by such conveyance, give any additional rights to the proprietors of the flats upon which the new part of the wharf, extending towards the channel, was to be built. If that language had any meaning and application to the thing granted, it must have been intended to apply to that part of the wharf, between their stores and the dock, which they had covenanted should remain open, as a free passage and way. The language of the proposals was, "the proprietors of Deering's wharf, so called, to keep the whole width open, from the upper store to the easterly side of Fish street, and so continue that width open the whole way, down to the end of said wharf, for a *passage way* forever." So far as we may judge, from the conduct of the parties, what they meant by their language, the words "passage way," as used in the proposals, seem to have been intended to embrace something more than a mere right of way; for immediately after the wharf was built, the "passage way" was occupied and managed as a wharf owned in common, by all the proprietors, for their common benefit, and continued to be so occupied and managed, until the conveyance by Clapp to Chase, February 27, 1847.

It would not be impossible, that Jewett and Preble should have used the words "passage way" in their deed, with the same meaning, which they had attached to the same words,

in the proposals signed by them and their associates. When the construction of a deed is doubtful, great weight is to be given to the construction put upon it by the parties. *Stone* v. *Clark*, 1 Metc. 378. The deed from Preble to Clapp of Aug. 12, 1799, described the estate conveyed as "a parcel of flats, whereupon a part of long wharf, in Portland, so called, is built." Clapp's deed to David T. Chase of Feb. 7, 1847, of the same estate, conveyed it, by the same description, "reserving however from said flats all conveyances which have heretofore been made to the proprietors of said Long wharf, to hold in common, and all rights of way which have been so conveyed." The deed from Jewett to Chase, of July 1, 1850, conveyed by similar description and with the same reservations. There was, therefore, a recognition, by the grantors of Chase, that the wharf was a part of Long wharf, and there was also a reservation of a common right, as having been previously conveyed to the proprietors of Long wharf, and it should be observed, that while Jewett, one of the grantors of Chase, derived his title from his ancestor, Joseph Jewett, Clapp, his other immediate grantor, appears to have owned the estate conveyed by him from Aug. 12, 1799, to Feb. 27, 1847.

By statutes of March 10, 1784, and March 15, 1821, and by R. S., c. 85, provisions were made for the better managing lands, wharves, &c., and other real estate lying in common, and conferring upon the proprietors of such lands and wharves, upon due preliminary proceedings, certain corporate powers, and as a part of the case at bar, there are certain copies, from the "Book of Records belonging to the proprietors of Portland Long wharf," which are to be used as the originals might be used. The defendants resist the plaintiff's right to recover, under claim of title in David T. Chase, whose title was derived from Preble, Jewett and Clapp, who were members of the corporation; and we think there can be no doubt, that the records of the proprietors' proceedings, while *they* were such members, are admissible, and no objection having been made to the legality of their

Proprietors of Long Wharf *v.* Palmer.

proceedings, it is to be presumed, they were conformable to the requirements of the statutes in force at the times of the transactions therein recorded.

By the records of the proprietors, it appears, that from the year 1793 to the time of the conveyance to Chase, in 1847, the whole wharf, including what was formerly Deering's wharf, constituted Long wharf, the west side of which, between the stores and the dock, during all that time, was occupied and managed as the common estate of the proprietors of Long wharf, with one wharfinger for the whole, and that the income was regularly divided among the several proprietors, according to their several interests therein, unless when expended for common repairs or improvements; and to the same effect is the testimony of Eliphalet Webster and of Joseph Deering, in the case.

The inevitable conclusion, from all the evidence presented, is, that it was the original intention and purpose of all the proprietors, including Jewett and Preble, to build a wharf, by the addition of a new part towards the channel, which was to be built upon flats owned in common by all the proprietors, and was to be divided into shares, and also, by an addition of a new part, on the west side of Deering's wharf, so that the whole wharf might be extended to the line of the dock, which was to be done at the expense of the owners of Deering's wharf; that the stores on Deering's wharf, and the east side of the wharf, should be and remain the property of the several owners thereof, as they had been before that time, and that the west side of the whole wharf, for use as a wharf and passage way, should be, and continue an estate in common, as was the dock adjacent; and that by the deeds and proceedings of the parties interested, as proprietors, they perfectly accomplished what they intended to do in the matter.

The action therefore is maintained, and a default must be entered.

SHEPLEY, C. J., and HOWARD, RICE and CUTTING, J. J., concurred.